UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| TERRI SMITH, Individually and as | ) | |
| ADMINISTRATRIX OF THE ESTATE OF | ) | |
| KENNETH H. SMITH, | ) | Civil No. 13-01-GFVT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM** |
| v. | ) | **OPINION** |
| | ) | **&** |
| DAN FLINKFELT, et al., | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

**\*\*\*\*    \*\*\*\*    \*\*\*\*    \*\*\*\***

Before the Court is the Motion for Summary Judgment filed by the Defendants, Henry County Animal Control, Henry County Fiscal Court and Dan Flinkfelt, in his official and individual capacities.  [R. 3.]  They seek summary judgment dismissing the claims of the Plaintiff, Terri Smith, individually, and as Administratrix of her deceased husband, Kenneth Smith's, estate.  [*Id.* at 1.]  Smith objects to the dismissal of her claims and those of the estate.  [R. 5.]  For the following reasons, the Defendants' motion will be GRANTED.

**I**

Flinkfelt, a senior officer for Henry County Animal Control, searched Plaintiff's property investigating reports of animal cruelty.  Based on his observations, Flinkfelt, with help from a group of Henry County employees and volunteers, removed approximately 200 animals from Plaintiffs' property.  They were subsequently charged with over 200 counts of animal cruelty.[1]

---

[1] Karen Nullums, who was living in a mobile home on Plaintiffs' property and housed some of the animals, was also charged with ten counts of animal cruelty.  [R. 5, at 4.]

The United States Marshal's Office arrested Mr. Smith in LaGrange, Kentucky. Mrs. Smith was arrested in Bullitt County, Kentucky. Prior to adjudication of Mr. Smith's charges, he committed suicide. Mrs. Smith executed a plea agreement allowing her to plead to one count of animal cruelty in the second degree. She was also required to forfeit all of her animals to the Commonwealth of Kentucky.

At the end of 2012, Mrs. Smith filed two separate actions in Henry County Circuit Court. She filed one suit on her own behalf, *Smith v. Flinkfelt, et al.*, 13-CV-02-GFVT, and the other, *Smith v. Flinkfelt, et al.*, 13-CV-01-GFVT, individually and as Administratrix of her husband's estate. In her Complaint, she requests damages pursuant to 42 U.S.C. § 1983 based on the violation of her constitutional rights, the infliction of emotional distress, defamation, and the egregious conduct of the Defendants. [R. 1-2, 13-CV-02-GFVT.] In her role as Administratrix, and in her individual capacity, she seeks damages based on the deprivation of Mr. Smith's constitutional rights in violation of section 1983 and for defamation, loss of consortium, and the infliction of emotional distress. [R. 1-3.]

## II

### A

Because Defendants' instant motion for summary judgment comes in the early stages of this litigation, the Administratrix argues that it should be considered under the 12(b)(6) motion to dismiss standard. She contends that converting it to a motion for summary judgment without either party receiving sufficient notice from the Court and without an adequate period of discovery is improper. [R. 5, at 15.] The Court rejects this argument.

There is no prohibition against a party submitting a motion for summary judgment before any discovery has been conducted. Rule 56(b) of the Federal Rules of Civil Procedure provides

that "[u]nless a different time is set by local rule or the court orders otherwise, a party may file a motion for summary judgment at any time until 30 days after the close of all discovery." Fed.R.Civ.P. 56(b).  In *Short v. Oaks Correctional Facility*, 129 Fed. App'x 278 (6th Cir. 2005) (unpublished), the Sixth Circuit Court of Appeals affirmed a trial court's decision to grant summary judgment prior to the taking of any discovery.  There, the defendants filed motions for dismissal and summary judgment on sovereign and qualified immunity grounds.  *Id.* at 279.  The plaintiff objected to the motions arguing that they were premature and that she deserved an opportunity to conduct discovery prior to any rulings.  *Id.* at 280.  Notwithstanding her objections, she failed to submit additional motions or file an affidavit explaining her need for additional discovery.  *Id.*  The trial court entered summary judgment for the defendants.  *Id.*

On appeal, the plaintiff argued that the district court abused its discretion by granting summary judgment without permitting an opportunity for discovery.  *Id.*  The court noted in its opinion that Rule 56(f) "provides a mechanism for a plaintiff and the courts to give effect to the well-established principle that 'the plaintiff must receive 'a full opportunity to conduct discovery' to be able to successfully defeat a motion for summary judgment.' "  *Id.* at 281 (quoting *Ball v. Union Carbide Corp.*, 385 F.3d 714, 719 (6th Cir. 2004) (internal citations omitted)).  The court also emphasized the importance of avoiding cursory requests for more discovery.  In doing so, it noted that "a plaintiff opposing a motion for summary judgment cannot simply argue that it needs more discovery-instead, the plaintiff must file a Rule 56(f) affidavit or a motion that indicates to the district court" what material evidence it seeks to uncover "by the additional discovery requested."  *Id.*  Based on the facts and review of prior case law, the court concluded the following:

we find that the district court did not abuse its discretion in ruling on the motions for summary judgment without permitting [plaintiff] to engage in discovery.  The [plaintiff] did not file an affidavit or motion asking for additional discovery,[] and while her response did generally indicate her need for discovery and why discovery had not yet taken place, it did not "state how any discovery would have shed further light on the issue" of deliberate indifference.  *Ball*, 385 F.3d at 721.  In the face of the motions for summary judgment-which were supported by affidavits and other evidentiary documentation-the [plaintiff] was required to come forward with more than a general and conclusory statement regarding the need for discovery.

*Id.* at 282.  The court also opined that the district court's decision to rule on the summary judgment motions without the taking of any discovery was "further justified . . . because the motions raised the threshold issue of qualified immunity."  *Id.* at 283.

The circumstances encountered here are identical to those present in *Short*.  The motion for summary judgment was filed prior to the taking of any discovery; the Defendants have raised sovereign and qualified official immunity as threshold questions; and the Administratrix has failed to raise anything more than a cursory request for discovery.  [R. 3; R. 5.]  Based on that court's rulings, review of the instant motion under the summary judgment standard is proper.  After all, "questions of qualified immunity should be resolved 'at the earliest possible stage in litigation' or else the 'the driving force' behind immunity – avoiding unwarranted discovery and other litigation costs – will be defeated."  *Everson v. Leis*, 556 F.3d 484, 492 (6th Cir. 2009) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)).

### B

Summary judgment is appropriate where "the pleadings, discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323-25 (1986).  "A genuine dispute exists on a material fact, and

thus summary judgment is improper, if the evidence shows 'that a reasonable jury could return a verdict for the nonmoving party.' " *Olinger v. Corp. of the President of the Church*, 521 F. Supp. 2d 577, 582 (E.D. Ky. 2007) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). Stated otherwise, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Anderson*, 477 U.S. at 252.

The moving party has the initial burden of demonstrating the basis for its motion and identifying those parts of the record that establish the absence of a genuine issue of material fact. *Chao v. Hall Holding Co., Inc.*, 285 F.3d 415, 424 (6th Cir. 2002). The movant may satisfy its burden by showing "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp.*, 477 U.S. at 325. Once the movant has satisfied this burden, the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate there is a genuine issue. *Hall Holding*, 285 F.3d at 424 (citing *Celotex*, 477 U.S. at 324). Moreover, "the nonmoving party must do more than show there is some metaphysical doubt as to the material fact. It must present significant probative evidence in support of its opposition to the motion for summary judgment." *Hall Holding*, 285 F.3d at 424 (internal citations omitted).

Finally, the trial court is under no duty to "search the entire record to establish that it is bereft of a genuine issue of material fact," and "the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 655 (6th Cir. 2001). In applying the summary judgment standard, the Court must review the facts and draw all reasonable inferences in favor of the non-moving party. *Logan v. Denny's, Inc.*, 259 F.3d 558, 566 (6th Cir. 2001) (citing *Liberty Lobby*, 477 U.S. at 255).

5

# III

## A

Defendants identify three causes of action in Plaintiff's Complaint. The first cause of action alleges that the Defendants failed to "hire, properly train, and supervise," and "implement appropriate policies and procedures to prevent unnecessary inflammatory statements and incorrect statements [from] being issued to the media," causing Mr. Smith to suffer severe emotional distress resulting in his untimely death. [R. 1-3, at 8.] The second cause of action is asserted by the Administratrix in her individual capacity and she alleges claims for loss of consortium and "mental and emotional suffering" resulting from the Defendants' conduct. [*Id.* at 9.] In the third cause of action, the Administratrix, in her individual capacity, and on behalf Mr. Smith's estate, requests punitive damages for the alleged defamation. [*Id.* at 10.]

It is with respect to these claims that the Defendants initially seek summary judgment. They argue that the Administratrix's claims and her claims on behalf of Mr. Smith fail as a matter of law. To be more specific, they assert that actions for defamation do not survive the death of the person allegedly defamed, that section 1983 does not redress claims for loss of consortium, and that any remaining claims are wholly duplicative of the Administratrix's separate civil action, *Smith v. Dan Flinkfelt, et al.,* 6:13-CV-02-GFVT. [R. 3, at 1.]

Alternatively, Defendants declare that the claims alleged against Flinkfelt, in his official capacity, Henry County Animal Control, and Henry County Fiscal Court are duplicative, and should all be properly considered as claims against Henry County. [*Id.*] Based on that premise, they contend that Smith's claims also fail as a matter of law because he has failed to establish any policy or custom that caused his injuries, and that sovereign immunity protects Henry

County from any state law claims alleged.  [*Id.* at 1-2.]  They also argue that Flinkfelt, in his individual capacity, is entitled to qualified immunity.  [*Id.* at 1.]

The Administratrix failed in her Response to refute Defendants' argument that they are entitled to summary judgment on her loss of consortium and infliction of emotional distress claims.  A failure to respond to arguments raised against specific claims constitutes abandonment of those claims.  *Knittel v. First Fin. Mortg. Corp.,* No. 08–44–JBC, 2009 WL 1702174, at *3 (E.D.Ky. June 17, 2009) ("By failing to respond specifically to Citimortgage's arguments on those claims, the plaintiffs have abandoned them, and the court will grant summary judgment to Citimortgage.").  Moreover, this circuit has held that "no cause of action may lie under section 1983 for emotional distress, loss of a loved one, or any other consequent collateral injuries suffered personally by the victim's family members."  *Claybrook v. Birchwell*, 199 F.3d 350, 357 (6th Cir. 2000); *Tallman v. Elizabethtown Police Department, et al.*, 344 F.Supp.2d 992, 997 (W.D. Ky. 2004).  Consequently, summary judgment as to the Administratrix's emotional distress and loss of consortium claims is appropriate.

Plaintiffs' section 1983 claims on behalf of Mr. Smith premised on defamation must also fail as a matter of law.  The Administratrix's Response failed to address Defendants' arguments on this issue, but even more important to this determination is that the law of this circuit and Kentucky clearly provide that a claim for defamation does not survive the death of the defamed party.  *Memphis Development Foundation v. Factors Etc., Inc.*, 616 F.2d 956, 959 (6th Cir. 1980); *Mineer v. Williams*, 82 F.Supp.2d 702, 704 (E.D. Ky. 2000) (noting that "a Kentucky statute specifically provides that a claim for libel or slander does not survive the death of the person libeled").  Therefore any claims on Mr. Smith's behalf premised on defamation cannot persist.

The Administratrix did not, however, abandon all claims arising out of the Complaint. She alleges Defendants deprived Mr. Smith of his Fourth, Fifth, and Fourteenth Amendment rights by unlawfully arresting him without probable cause in violation of section 1983. [R. 1-3, R. 5, at 16.] She also asserts, on his behalf, state law claims for wrongful death and intentional infliction of emotional distress. [R. 5, at 16.] With respect to her own claims, the Administratrix alleges that the Defendants violated her Fifth and Thirteenth Amendment rights in violation of section 1983. [R. 5, at 21.] These claims require further analysis and ultimately adjudication.

## B

The Administratrix alleges violations of Mr. Smith's Fourth, Fifth, and Fourteenth Amendment rights, but her arguments are all premised on the restraint of Mr. Smith's liberty without probable cause. Claims alleging seizure without probable cause or through excessive force in violation of the Constitution sound in the Fourth Amendment. *United States v. Torres-Ramos*, 536 F.3d 542, 554 (6th Cir. 2008); *Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding excessive force claims should be analyzed under the Fourth Amendment "reasonableness standard"). Therefore, her claim based on arrest without probable cause will be considered under the Fourth Amendment.[2]

---

[2] In Defendants' Reply Brief, they choose to address separately the merits of each alleged constitutional violation. As a result of this delineation, their response to the Fifth Amendment argument raised by the Estate includes analysis of whether Mr. Smith has commenced the proper proceedings to state "a claim under the Fifth Amendment Just Compensation Clause." [R. 7, at 11.] Such analysis is appropriate under the Fifth Amendment, but not with respect to Mr. Smith. The Court does not find any evidence to support the notion that the Administratrix is raising a "Takings Clause" issue on behalf of Mr. Smith. As is pointed out by the Defendants, it would be terribly inconsistent for the Estate to argue that they lacked probable cause to arrest Mr. Smith for animal cruelty because he did not own the animals, and then argue alternatively that his property rights in the animals were not sufficiently protected. The Court has scoured the Estate's response and does not find that to be the case. Consequently, the Court construes Mr. Smith's Fifth Amendment claim as one based on the deprivation of his liberty without probable cause.

Section 1983 "provides a remedy for deprivations of rights secured by the Constitutions and laws of the United States...." *Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 924, 102 S.Ct. 2744, 2747, 73 L.Ed.2d 482 (1982); *Mertik v. Blalock,* 983 F.2d 1353, 1359 (6th Cir. 1993). "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988); *Galloway v. Swanson,* 5:09CV02834, 2012 WL 646074 (N.D. Ohio Feb. 28, 2012) *aff'd sub nom. Galloway v. Anuszkiewicz,* 12-3367, 2013 WL 1149679 (6th Cir. Mar. 21, 2013).

The Administratrix charges that Defendants did not have probable cause to arrest Mr. Smith and also posits that "a reasonable officer would never have made inflammatory statements, especially without any investigation to determine Mr. Smith's involvement with these animals." [R. 5, at 17, 19.] Defendants contend that qualified immunity shields them from any liability arising from the Administratrix's claims on behalf of Mr. Smith. The Court agrees.

## 1

Claims asserted against Henry County Animal Control and Flinkfelt, in his official capacity, will be dismissed. "[I]ndividuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir. 2003) (citing *Kentucky v. Graham,* 473 U.S. 159, 165 (1985)). This is because "a plaintiff seeking to recover on a damages judgment in an official-capacity suit must look to the government entity itself." *Graham,* 473 U.S. at 166. Suit against Flinkfelt, in his official capacity, is nothing more than a suit against Henry County, an entity already defending the suit, and thus the Court deems it appropriate to dismiss all federal "official capacity" claims against Flinkfelt on redundancy grounds. *See*

*Lambert v. Hartman*, 517 F.3d 433, 439-40 (2008) ("[Plaintiff] sued the Clerk in his official capacity, which is the equivalent of suing the Clerk's employer, the County").

Dismissal of any claim against Henry County Animal Control is also appropriate because it is a subdivision of Henry County. *See Watson v. Gill*, 40 F. App'x 88, 89 (6th Cir. 2002) ("The McCracken County jail is not a legal entity susceptible to suit.  Because the McCracken County Jail is a department of the county, the county is the appropriate party to address [the plaintiff's] suit."); *see also Taylor v. Adams*, No. 5:11-CV-P164-R, 2011 WL 6415499, at *2 (W.D. Ky. Dec. 21, 2011).

## 2

The Fourth Amendment claim as set forth against Henry County also fails.  To establish a claim against a county pursuant to section 1983, "a plaintiff must show: 1) a deprivation of his constitutional or federal rights: 2) that occurred pursuant to a custom, usage, or official policy of the municipality." *Id.* (citing *Monell v. Dep't of Soc. Serv. Of the City of New York*, 436 U.S. 658, 690-91 (1978).  With respect to the second prong, "[section] 1983 liability attaches to a municipality only when the execution of its 'policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,' inflicts the injury upon the plaintiff." *Id.* (internal citations omitted).  The policy or custom must arise from the "official or officials responsible for establishing final policy with respect to the subject matter in question." *Pembaur,* 475 U.S. at 483.  *Pembaur v. Cincinnati,* 475 U.S. 469, 483 (1986); *Bennett*, 99 F. App'x at 716.

While the Administratrix might argue that Mr. Smith was deprived of a Constitutional right, she has failed to identify any "custom, usage or official policy" of Henry County that subverts the Fourth Amendment rights of persons accused of animal cruelty.  The Administratrix

10

makes unspecific references in her complaint to Henry County's "duty to hire and properly train and supervise" its animal control officers and personnel "to prevent unwarranted, disparaging, slanderous publicity and unnecessary humiliation."  [R. 1-3 at 7.]  There is no evidence in the record or any reference to evidence which might exist of any specific inadequacies in training programs that lead to this behavior.  Furthermore, there is no connection alleged between these suggested deficiencies and any allegedly deprived Constitutional right.  Without this evidence, the Administratrix's section 1983 claim based on violation of Mr. Smith's Fourth Amendment rights cannot survive Defendants' motion for summary judgment.

**3**

The Fourth Amendment claim also fails against Flinkfelt in his individual capacity because he has invoked and is entitled to qualified immunity.  When invoked, "the doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).  In evaluating claims of qualified immunity, courts generally apply a two-step analysis.  First, "[t]aken in a light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Second, was the right at issue "clearly established." *Id.*  "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).  "The burden of convincing a court that the law was clearly established rests squarely with the plaintiff." *Key v. Grayson*, 179 F.3d 996, 1000 (6th Cir. 1999) (citation and internal quotation marks omitted).  Although at one time courts were required to follow these

11

steps sequentially, the Supreme Court has abandoned that position and now permits courts to "exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Flinkfelt denies arresting Mr. Smith and contends that the United States Marshal's Service was responsible for his arrest.  The Administratrix does not refute this claim.  In fact, the Administratrix acknowledges in her Complaint that Mr. Smith was arrested by an agent of the United States Marshals Service.  Based on this fact, the only reasonable conclusion to draw is that Flinkfelt is entitled to summary judgment because his conduct did not violate any clearly established constitutional rights.  *See Pearson*, 555 U.S. at 231; *see also Cunningham v. Reid*, 337 F.Supp.2d 1064, 1070 (W.D. Tenn. 2004) (the plaintiff failed to proffer evidence of the defendant either unconstitutionally seizing or using excessive force, so the court ruled that the defendant was entitled to summary judgment on the plaintiff's section 1983 claims).

## C

The Administratrix's state law claims for wrongful death and intentional infliction of emotional distress on behalf of Mr. Smith fail as a matter of law as well.  This is so because Henry County and Flinkfelt, in his official and individual capacity, are shielded from suit by state sovereign and qualified immunity.

## 1

When assessing whether defendants are entitled to immunity from state law tort liability, the Court must apply Kentucky rules of sovereign immunity.  *See Funke v. Coogle*, No. 3:11-CV-310-H, 2013 WL 209602 (W.D. Ky. 2013) (citing *King v. Taylor*, 694 F.3d 650, 662-64 (6th Cir. 2012).  "A county government is cloaked with sovereign immunity."  *Schwindel v. Meade*

12

*County*, 113 S.W.3d 159, 163 (Ky. 2003); *see also Doe v. Patton*, 381 F. Supp.2d 595, 602 (E.D.Ky. 2005) ("County governments in Kentucky are cloaked in sovereign immunity, unless such immunity is expressly waived").  In addition, a county cannot "be held vicariously liable in a judicial court for the ministerial acts of its agents, servants, and employees." *Schwindel*, 113 S.W.3d at 163.  As it relates to individuals sued in their official capacities, they are "cloaked with the same immunity as the government or agency [they] represent." *Id*. at 169 (citing *Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001).

The Supreme Court of Kentucky has noted that it will find "waiver only where stated 'by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction.' " *Department of Corrections v. Furr,* 23 S.W.3d 615, 616 (Ky.2000) (quoting *Withers v. University of Kentucky,* 939 S.W.2d 340, 346 (Ky.1990) (internal citation omitted).  Unless Henry County and Flinkfelt waived their right to sovereign immunity with respect to wrongful death claims and intentional infliction of emotional distress, they are shielded from the Administratrix's state law claims on behalf of Mr. Smith.  *See Doe*, 381 F.Supp.2d at 602.

The Administratrix has failed to produce any evidence that either Flinkfelt or Henry County waived its right to governmental immunity.  Moreover, the cases from this circuit establish that sovereign immunity protects Henry County and Flinkfelt, in his official capacity, from the Administratrix's claims on behalf of Mr. Smith of wrongful death and intentional infliction of emotional distress.  *Criswell v. Wayne County, Ky.,* 165 F.3d 26 (Table), 1998 WL 598739, at *7 (6th Cir. 1998) (recognizing that absent a waiver, actions against counties and county officials in Kentucky fail because both are entitled to sovereign immunity); *Howard ex rel. Estate of Howard v. Bayes*, 378 F.Supp.2d 753, 762 (E.D. Ky. 2005) (holding that state

13

sovereign immunity "protects Sheriff Montgomery, in his official capacity, and Magoffin County" from a "state law claim of wrongful death"); *see also Smith v. City of Corbin*, CIV. 11-99-GFVT, 2013 WL 139726, at *17 (E.D. Ky. Jan. 10, 2013) (this Court noting that Kentucky case law has not abrogated counties' rights to assert "sovereign immunity for intentional infliction of emotional distress claims"); *Webb v. Jessamine County Fiscal Court*, No. 5:09-cv-314-JMH, 2011 WL 3444091, at *2 (E.D. Ky. August 8, 2011) (the Court ruling that the defendant, "in his official capacity, enjoys immunity from [p]laintiff's state law claims of negligence and intentional infliction of emotional distress").  Hence, the Administratrix's state law claims against Henry County and Flinkfelt, in his official capacity, fail.

## 2

Flinkfelt was also sued in his individual capacity on the state law claims.  The wrongful death claim, which is premised on defamation, cannot survive because, as previously noted, such claims cannot outlive the allegedly defamed individual.  *See Memphis Development*, 82 F.Supp. at 704.  The intentional infliction of emotional distress claim on behalf of Mr. Smith fails because Flinkfelt, in his individual capacity, is entitled to qualified official immunity protection.

Officers or employees of county government enjoy the same immunity privileges that the county enjoys, but "when sued in their individual capacities, public officers and employees enjoy only qualified official immunity, which affords protection from damages liability for good faith judgment calls made in a legally uncertain environment."  *Yanero*, 65 S.W.3d at 522.  Under Kentucky law, "[qualified] official immunity is 'immunity from tort liability afforded to public officers and employees for acts performed in the exercise of their discretionary functions.' " *Lewis v. Meyers*, 2010 WL 3829200, at *3 (W.D. Ky. Sept. 24, 2010) (quoting *Yanero*, 65 S.W.3d at 521).  Qualified official immunity is applicable to " 'the negligent performance by a

14

public officer or employee of (1) discretionary acts or functions, i.e., those involving the exercise

of discretion and judgment, or personal deliberation, decision, and judgment, (2) in good faith,

and (3) within the scope of the employee's authority.'" *Id.* (quoting *Yanero*, 65 S.W.3d at 522).

The Administratrix does not clearly identify the deliberate act that caused the Decedent's

emotional distress, but based on the Administratrix's recitation of the facts the deliberate act was

most likely Flinkfelt's decision to remove the animals, to pursue charges of animal cruelty

against Mr. Smith and the Administratrix, or his remarks to the media.  These acts were all

discretionary in nature.  *See M.W. ex rel. T.W. v. Madison Cnty. Bd. of Educ.*, 262 F. Supp. 2d

737, 746 (E.D. Ky. 2003) ("[t]he Kentucky Supreme Court has recently defined discretionary

functions as 'those involving the exercise of discretion and judgment, or personal deliberation,

decision, and judgment' as opposed to ministerial acts requiring 'obedience to the orders of

others' " (internal citation omitted)).  Flinkfelt's actions were also consistent with his duties as an

employee of Henry County Animal Control and were performed within the scope of his

authority.  This is conceded by the Administratrix.  ("Mr. Flinkfelt was acting in an official

capacity, but a review of his actions show they were discretionary in nature." [R. 5 at 20].

Because Flinkfelt has demonstrated *prima-facie* that his acts were performed within the

scope of his discretionary authority, the burden moves to the Administratrix to show by "direct

or circumstantial evidence that the discretionary act was not performed in good faith." *Yanero*,

65 S.W.3d at 523.  The term "good faith," however, is a bit misleading, because the evidence to

be presented is that of "bad faith."  *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky. 2006).

Indeed, generally, "good faith" is presumed in absence of  evidence establishing "bad faith." *Id.*

The Kentucky Supreme Court explained the relationship between qualified official immunity and

"bad faith" in the following way:

> [B]ad faith can be predicated on a violation of a [causally related] constitutional, statutory, or other clearly established right which a person in a public employee's position presumptively would have known was afforded to a person in the plaintiff's position ... or if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive.

*Yanero,* 65 S.W.3d at 523. Here, as has already been explained in the preceding qualified immunity analysis, the Administratrix fails to establish that Flinkfelt violated one of Mr. Smith's clearly established rights. As is acknowledged by both parties, Flinkfelt did not arrest Mr. Smith. He was arrested by a United States Marshal. The charges of animal cruelty pursued by Flinkfelt were based on the living conditions of the animals. [R. 3-3, at 1-22.] Finally, the Administratrix has failed to direct the Court's attention to any evidence which shows that the statements made by Flinkfelt to the media were false or incorrect.

The second prong of the *Yanero* test suggests that bad faith may be shown "if the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive." *Id.* It is suggested by the Administratrix that Flinkfelt's actions "were discretionary in nature" and that "the Plaintiff's allegations, taken as true, show he [Flinkfelt] was not acting in good faith." [R. 5 at 20]. The Administratrix suggested that Flinkfelt vilified Mr. Smith and suggested that "[w]aiting more than five months to investigate this complaint raises questions about the real purpose of the December raid." [R. 10]. Such unsupported accusations are not enough to satisfy the Plaintiff's burden in overcoming summary judgment. The Administratrix has provided no evidence of bad faith.

Without having demonstrated the violation of an established right which a person in Flinkfelt's position "presumptively would have known was afforded to a person in the plaintiff's position" or showing that "the officer or employee willfully or maliciously intended to harm the plaintiff or acted with a corrupt motive," the Administratrix cannot overcome the qualified

official immunity defense. *Yanero,* 65 S.W.3d at 523  Consequently, summary judgment is also appropriate as to this claim.  Given that none of the claims alleged on behalf of Mr. Smith have survived this analysis, granting summary judgment in favor of Defendants against all of the Administratrix's claims on behalf of Mr. Smith is appropriate.

**D**

The Administratrix's claims on her own behalf can be addressed in summary fashion. She argues that her property was taken without just compensation in violation of the Fifth Amendment.  [R. 5, at 21.]  Notwithstanding the arguments raised in her response, the Complaint is devoid of any mention of a Fifth Amendment Takings Clause violation.  Indeed, the only reference to a Fifth Amendment Takings Clause concern appears for the first time in the Administratrix's response to the Defendants' motion for summary judgment.  [R. 5, at 21.]  The same is true of the allegation that her Thirteenth Amendment rights were violated.  She fails to include any violation of her Thirteenth Amendment rights in the Complaint.

The Sixth Circuit Court of Appeals teaches that it is impermissible for a plaintiff to raise a new legal claim for the first time in a response to a motion for summary judgment.  *See Tucker v. Union of Needletrades*, 407 F.3d 784, 788 (6th Cir. 2005); Gilmour v. Gates, McDonald & Co., 382 F.2d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Green v. Parker Hannifin Corp.*, No. 3-04-1139, 2006 WL 229043, *6 (M.D. Tenn. January 30, 2006).

Notably, in a separate action filed by the Administratrix on her own behalf, *Smith v. Flinkfelt, et al.*, 3:13-cv-02-GFVT, she alleges claims based on a violation of her Fifth Amendment rights.  Because she has sufficiently pled this issue in another action it need not be adjudicated in the instant action.  *See Stewart v. Procter & Gamble Co.*, *2 (S.D. Ohio

17

September 12, 2006) (the court found that the instant lawsuit was duplicative of another action brought by plaintiff thereby leading it to conclude that "[s]uch exact duplication provides, in our opinion, the necessary justification to warrant dismissal of the present action.").  Consequently, summary judgment against the Administratrix's claims is also appropriate.

**IV**

Accordingly, and the Court being sufficiently advised, it is hereby **ORDERED** as follows:

(1)     Defendants' Motion for Summary Judgment [R. 3] is **GRANTED**; and

(2)     The Court will enter an appropriate judgment contemporaneously herewith.


This 30th day of September, 2013.




**Signed By:**

*Gregory F. Van Tatenhove*

**United States District Judge**

18